Tommy THOMPSON, Petitioner,

v.

TRAVELERS INDEMNITY CO. OF RHODE ISLAND, Respondent.

No. C–8895.

Supreme Court of Texas.

May 9, 1990.

Edward Berliner, Austin, for petitioner.

B. Russell Horton, Austin, for respondent.

## OPINION

PHILLIPS, Chief Justice.

The sole issue for our determination is whether Petitioner, Tommy Thompson ("Thompson"), a jockey, was as a matter of law an employee of a race track at the time he was injured immediately after a horse race, prior to dismount. Thompson was injured when he was thrown from his mount at Manor Downs, a member track of the American Quarter Horse Association ("AQHA"). The trial court, sitting without a jury, denied Thompson's workers' compensation claim, holding that he was not an employee of Manor Downs. The court of appeals affirmed in an opinion, 777 S.W.2d 722, rejecting Thompson's contention that, as a matter of law, he was an employee of Manor Downs. For the reasons stated below, we affirm the judgment of the court of appeals.

The test to determine whether a worker is an employee or an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585–90 (Tex.1964). This same test applies whether the claim arises at common law or under workers' compensation. *Elder v. Aetna Casualty & Sur. Co.*, 149 Tex. 620, 623, 236 S.W.2d 611, 613 (1951). The employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment as well. *Travelers Ins. Co. v. Ray*, 262 S.W.2d 801, 803 (Tex.Civ.App.—Eastland 1953, writ ref'd). Examples of the type of control normally exercised by

an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *See United States Fidelity and Guar. Co. v. Goodson,* 568 S.W.2d 443, 447 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.).

 On the day of his injury, Thompson was a jockey in a daily pool of jockeys, available for selection by horse owners who had not already hired a jockey for a particular race. In one of the races, an owner selected Thompson to ride, and during the ride Thompson was injured. Thompson argues that Manor Downs was his employer at the time of his injury as it exercised control over the "pool jockeys" by: 1) requiring them to be licensed in compliance with the AQHA; 2) monitoring every jockey prior to, during, and after a race; 3) explaining the AQHA riding rules to the jockeys before the race; 4) requiring them to report to the track one hour before the first race of the day for weight verification and other preliminary matters; 5) paying $40 per race (less $5 for accident insurance) to each jockey, which was a mount fee collected from each owner or trainer; 6) providing a saddle towel and helmet cover to identify and differentiate contestants; and 7) fining jockeys or revoking their Manor Downs licenses upon violation of the AQHA racing rules.

These circumstances do not establish, as a matter of law, an employer-employee relationship. We hold there is some evidence in the record to support the judgment of the trial court.

The evidence in the record to support the judgment demonstrates that the owner or trainer, not the track, controlled the progress, details and methods of Thompson's work. Owners and trainers, not Manor Downs, pay the $40 mount fee, which is collected by the track and subsequently disbursed to the jockeys. Jockeys are free, without restrictions by the track, to negotiate an additional purse with the owner or trainer, usually in the event of a successful race. Owners or trainers, not Manor Downs, give instructions on strategy and tactics to the jockeys.

There is some evidence in the record to support the trial court's findings that Manor Downs does not prevent jockeys from racing at other tracks on any given day, does not require a jockey to remain at the track for the entire day, and does not require a jockey to ride any particular horse. Finally, it does not withhold taxes or social security from any jockey's pay. In short, Manor Downs does not exercise the control over a jockey indicative of, as a matter of law, an employer-employee relationship.

We have found no other case in Texas involving the employment status of jockeys. In most of the cases outside Texas that have examined this issue, the jockey has been determined not to be an employee of the track at which he or she rides. *See Haggard v. Industrial Commission,* 71 Ariz. 91, 223 P.2d 915 (1950) (jockeys are not employees of track at which they race); *Munday v. Churchill Downs, Inc.,* 600 S.W.2d 487 (Ky.Ct.App.1980) (freelance jockey who solicited mounts and was paid through track without tax or social security deductions was not an employee of track); *Biger v. Erwin,* 57 N.J. 95, 270 A.2d 12 (1970) (jockey is employee of the horse owner); *Drillon v. Industrial Accident Comm'n,* 17 Cal.2d 346, 110 P.2d 64 (1941) (jockey is employee of horse owner); *Simmons v. Kansas City Jockey Club,* 334 Mo. 99, 66 S.W.2d 119 (1933) (jockey not an employee of track); *Pierce v. Bowen,* 247 N.Y. 305, 160 N.E. 379 (1928) (jockey is employee of horse owner); *but cf. Wolf v. Louisiana State Racing Comm'n,* 545 So.2d 976 (La.1989) (worker's compensation was afforded to jockeys who raced at a track, but no discussion of employment status of jockey).

We therefore hold that the evidence does not conclusively establish that, as a matter of law, Thompson was an employee of Manor Downs. The judgment of the court of appeals is affirmed.