PETERSON 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-514-CV





HARTWIN RAY PETERSON, JR.,



 
 APPELLANT


vs.





TEXAS COMMERCE BANK-AUSTIN, NATIONAL ASSOCIATION,



 APPELLEE





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 91-9578, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING



 






 After obtaining a judgment against Hartwin Ray Peterson, Jr., appellant, in the
amount of approximately $125,000, Texas Commerce Bank-Austin, National Association ("Texas
Commerce"), appellee, obtained a "turnover order" requiring Peterson to turn over the income
from his chiropractic practice to a receiver. Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West
1986 & Supp. 1994) (hereinafter "Turnover Statute"). In a single point of error, Peterson
challenges the turnover order, claiming that his income qualifies as "current wages" and is
therefore not subject to turnover. See Turnover Statute § 31.002(f). We will affirm the district
court's order.



BACKGROUND


 Peterson is a chiropractor practicing in Austin, Texas. In August 1984, he
executed a promissory note payable to Texas Commerce in connection with a $190,000 loan. (1) 
Peterson subsequently defaulted on the note and shortly thereafter filed bankruptcy. The
bankruptcy court rendered a judgment declaring that Peterson had obtained credit from Texas
Commerce under false pretenses and, accordingly, that the debt evidenced by the note was
nondischargeable. See 11 U.S.C. § 523(a)(2)(A) (1993). Thus, after the bankruptcy Peterson
remained indebted to Texas Commerce for nearly $100,000, including interest. (2) In July 1991, 
Texas Commerce filed suit on the remaining debt and obtained a summary judgment in its favor. 
This Court affirmed the summary judgment. See Peterson v. Texas Commerce Bank-Austin, Nat'l
Ass'n, 844 S.W.2d 291 (Tex. App.Austin 1992, no writ).

 The instant chapter of this dispute concerns Texas Commerce's collection efforts. 
In 1993, Texas Commerce filed with the district court an application for an order requiring
Peterson to turn over the income from his chiropractic practice to a receiver, who would apply
all income in excess of reasonable living expenses to the satisfaction of Peterson's debt to Texas
Commerce. Peterson contested the application, contending that his income qualified as "current
wages" and was therefore exempt from turnover under the Texas Constitution and the Turnover
Statute. Tex. Const. art. XVI, § 28; Turnover Statute §§ 31.002(f), (3) 31.0025. At a hearing on
the issue, Peterson testified that his mother owned the clinic where he worked and that he was
merely her employee. He further testified that his income was compensation for the time he spent
treating the clinic's patients and was therefore current wages. The trial court disagreed and
rendered the requested turnover order.

 Peterson filed a motion for new trial. At the hearing on his motion, Peterson
testified that his employment situation had changed. He now worked for "Affiliated Chiropractic
Center," a clinic owned by his brother, also a chiropractor. Despite this alleged change in
circumstances, the trial court denied Peterson's motion, (4) and Peterson perfected this appeal.



DISCUSSION


 The focus of Peterson's appeal is somewhat ambiguous. The substance of his brief
concerns his current employment situation, evidence of which was presented to the trial court only
in connection with his motion for new trial. His single point of error, however, states: "The trial
court erred in finding appellant is an independent contractor and that his earnings are subject to
turnover." This point appears to be directed to the trial court's original finding that he is an
independent contractor, rather than to the trial court's denial of his motion for new trial. 
Consequently, it is not clear which action Peterson complains of.

 We may not reverse a trial court's judgment in the absence of properly assigned
error. Texas Nat'l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex. 1986). However, points of error
are construed liberally in order to adjudicate justly, fairly, and equitably the rights of the litigants. 
Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990). In the interests of justice, and because
the outcome of this appeal is not changed, we will construe Peterson's point of error as
challenging both the trial court's original determination that he is an independent contractor and
its subsequent denial of his motion for new trial.

 The concept of "current wages" implies an employer-employee relationship; an
independent contractor's income does not qualify as current wages. Hennigan v. Hennigan, 666
S.W.2d 322, 324 (Tex. App.Houston [14th Dist.]), writ ref'd n.r.e. per curiam, 677 S.W.2d
495 (Tex. 1984). Peterson argues that the district court erred in granting the turnover order
because he is an employee, and his income is exempt from turnover as current wages.

 The test to determine whether a worker is an employee or an independent
contractor is whether the employer has the right to control the progress, details, and methods of
operation of the employee's work. Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 278
(Tex. 1990). Five factors are generally considered relevant to this determination: (1) whether
the worker's business is independent from that of his employer; (2) who has the obligation to
furnish the necessary tools, supplies, and materials; (3) whether the worker has the right to control
the progress of the work except as to final results; (4) the length and regularity of the worker's
employment; and (5) whether the worker is compensated by the time or by the job. Pitchfork
Land & Cattle Co. v. King, 346 S.W.2d 598, 603 (Tex. 1961); Dougherty v. Gifford, 826 S.W.2d
668, 678 (Tex. App.Texarkana 1992, no writ). The record in the present case indicates that
tools, supplies, and materials do not play a material role in Peterson's business. Consequently,
our decision will be guided by the remaining four factors.



The Turnover Order



 Peterson asserts that the evidence proved conclusively he was merely an employee
whose income is not subject to the Turnover Statute. In deciding an as-a-matter-of-law point of
error, we must first consider only the evidence and inferences tending to support the "non-finding" of the trier of fact and disregard all evidence and inferences to the contrary. If there is
no evidence to support the non-finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas & N.O. R.R.
v. Burden, 203 S.W.2d 522, 528-31 (Tex. 1947). See generally William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 523
(1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974).

 Peterson cites two cases, Sydnor v. City of Galveston, 15 S.W. 202 (Tex. Ct. App.
1890), and Davidson Texas, Inc. v. Garcia, 664 S.W.2d 791 (Tex. App.Austin 1984, no writ),
as being analogous to the present case and supporting his argument that he is an employee as a
matter of law. In both of these cases, however, the trial court determined that the worker in
question was an employee. In affirming those findings, therefore, the appellate courts held only
that there was sufficient evidence to support the findings, not that the workers in question were
employees as a matter of law. The present case is easily distinguishable, because here the trial
court determined that Peterson was not an employee. We conclude that Sydnor and Garcia do not
support Peterson's position.

 All four of the relevant King factors support the trial court's decision to grant the
turnover order. First, the record contains evidence that Peterson operated a business distinct from
his mother's clinic. His mother testified that Peterson has a "long referral list" accumulated
during his many years of practice. She testified further that Peterson is solely responsible for
attracting patients to the clinic and that she has no role in patient selection. This evidence casts
considerable doubt on Peterson's claim to be merely an employee. Rather, the evidence indicates
that there are really two "businesses" here: the clinic and Peterson's chiropractic practice. 
Peterson urges us to focus on the clinic. Economic reality, however, indicates that the relevant
business is Peterson's practice. Peterson argues, in effect, that his patients come to the clinic and
he happens to be the doctor hired by the clinic to treat them. A more plausible explanation,
however, is that the patients come to see Dr. Peterson, and the clinic happens to be his current
location. It was certainly within the discretion of the trial court to look to substance rather than
form and believe the latter explanation.

 The second King factor is the right to control the progress of Peterson's work. 
Peterson's mother is not a chiropractor, and both she and Peterson testified that she played no part
in treatment decisions. While the ultimate test for the presence of an employer-employee
relationship is the existence, rather than the exercise, of the right of control, it was within the trial
court's discretion to conclude that Peterson's mother in fact had no such right or that, under the
circumstances, any such right she possessed was essentially meaningless. See Newspapers, Inc.
v. Love, 380 S.W.2d 582, 590 (Tex. 1964).

 Third, the length and regularity of Peterson's relationship with the clinic support
the conclusion that he is not an employee. The history of Peterson's chiropractic career presents
a series of shifting associations with his family members. Peterson first opened his own clinic,
Affiliated Chiropractic, in 1980. Peterson's brother and sister, both chiropractors, subsequently
joined him there. In 1984, he left Affiliated Chiropractic and opened another clinic, Austin
Chiropractic Diagnostic & Treatment. (5) This clinic remained in business until early 1988, when
it was shut down because of Peterson's "trouble with the IRS."

 At this point, Peterson went to work for his sister, who had left Affiliated
Chiropractic to open her own clinic. When his sister died in 1990, Peterson's mother assumed
management of the clinic as a trustee. (6) Peterson continued his practice there and opened another
clinic in Salado, Texas. While the Salado clinic was open, Peterson's mother performed the same
bookkeeping and administrative functions at both clinics. According to Peterson's testimony,
however, his mother was his employee at the Salado clinic, while he was her employee at the
Austin clinic. By the time the turnover order was granted, the Salado clinic had closed because
it was unprofitable, and Peterson worked solely at the Austin clinic.

 Peterson and his family members are, of course, free to arrange their business
affairs as they wish. However, the itinerant nature of Peterson's chiropractic practice and his
somewhat freewheeling use of employment arrangements entitled the trial court to discount
formalities in favor of economic realities. Peterson's work history would support a conclusion
that, rather than an employee, he was an independent businessman who periodically entered into
formal relationships with family members for the sake of convenience.

 Finally, we come to the issue of Peterson's pay. When sorting out an economic
puzzle like the ownership of a business, perhaps nothing is more telling than the flow of money. 
Peterson repeatedly insisted that he was on a fixed salary. He admitted under cross-examination,
however, that he received bonuses based on the profitability of the clinic. Indeed, Peterson's
mother testified on cross-examination that his income was "pretty much" determined by the excess
of the clinic's revenues over its expenses. Perhaps even more convincing is the striking contrast
between Peterson's income and his mother's. While Peterson earned $8,000 per month plus
bonuses based on the clinic's profits, his mother, purportedly the owner of the clinic, received a
fixed salary of $6,800 per year. Peterson's pay arrangements seriously undercut his claim to be
merely an employee.

 The evidence before the trial court indicated that Peterson attracted patients to the
clinic, performed all of its essential services, and took home the lion's share of the profits. This
evidence, combined with his history of shifting associations and work arrangements, is sufficient
to support the court's finding that Peterson was an independent contractor whose income was
subject to a turnover order.



The Motion for New Trial


 After the trial court rendered the turnover order, Peterson filed a motion for new
trial in which he alleged, among other things, a change in factual circumstances. To the extent
Peterson's motion for new trial alleged changed circumstances, it was analogous to a motion to
dissolve or modify a receivership. To prevail on such a motion, the movant must show the
existence of "some matter previously unknown to the trial court that makes the appointment of the
receiver improper or shows a fundamental error that renders the order [appointing the receiver]
void." Arensberg v. Drake, 693 S.W.2d 588, 592 (Tex. App.Houston [14th Dist.] 1985, no
writ).

 At a hearing on his motion for new trial, Peterson testified that he now works at
Affiliated Chiropractic, the clinic he once owned but which is now owned by his brother. 
Peterson introduced into evidence a written employment contract between him and his brother. 
He explained that because his brother is a chiropractor, he can control Peterson's work to a
greater extent than his mother could. On cross-examination, however, Peterson conceded that,
essentially, the existence of the employment contract is the only change in his working conditions. 
He still works at the same location, (7) treats the same patients, retains the same office personnel,
and uses the same equipment as he had when working for his mother. After hearing this evidence,
the court took the matter under advisement and later denied Peterson's motion.

 If the trial court were required to take Peterson's written employment contract at
face value, he might well be entitled as a matter of law to a vacation of the receivership order or
a new trial. However, the court is not so constrained. A court may disregard a contractual
characterization of a relationship where the contract in question is "a mere sham or cloak designed
to conceal the true legal relationship between the parties." Exxon Corp. v. Perez, 842 S.W.2d
629, 630 (Tex. 1992) (quoting Love, 380 S.W.2d at 590). The question before us is whether it
was an abuse of discretion for the trial court to decide that this was such a contract.

 At least two factors support the trial court's rejection of the contract. The first
factor is the nature of the contract itself. It is between family members, a circumstance that strips
away much of the solemnity that normally attends employment contracts. Furthermore, it is
between family members who have a history of rearranging their associations, arguably for the
sake of convenience. These facts support the trial court's implicit conclusion that Peterson's new
employment contract was simply a variation on a familiar theme rather than a material change in
circumstances.

 The second factor is Peterson's credibility. Aside from the written contract, the
only evidence presented in support of Peterson's motion was his own testimony. The trial court
is the sole judge of Peterson's credibility, and absent an abuse of discretion the trial court was
entitled to conclude that his testimony was insufficiently credible to indicate a material change in
his circumstances. D & M Vacuum Serv., Inc. v. Zavala County Appraisal Dist., 812 S.W.2d
435, 436 (Tex. App.San Antonio 1991, no writ). In this case, the trial court had several grounds
on which it could have chosen to discount Peterson's testimony. First, the court had already
rejected similar claims by Peterson regarding his employment arrangement with his mother. For
instance, at the hearing on the turnover order, Peterson repeatedly insisted that he was "on
salary," only to be forced to admit later that his pay varied considerably, based primarily on the
clinic's profits. Such inconsistencies are clearly relevant to the assessment of his later claim to
be a salaried employee of his brother.

 An additional consideration affecting Peterson's credibility is the evidence of his
apparent lack of good faith in his dealings with Texas Commerce. The court supervising
Peterson's bankruptcy concluded that he had originally obtained his loan from Texas Commerce
under false pretenses. Even after Texas Commerce filed the present action, Peterson resisted
compliance with the trial court's turnover order, eventually forcing the court to jail him for
contempt. All of the foregoing provides further support for the trial court's conclusion that
Peterson's testimony, even in combination with the written employment contract, was not
sufficient to prove changed circumstances.

 We conclude that, in light of these factors, the trial court did not abuse its
discretion in overruling Peterson's motion for new trial.



CONCLUSION


 We overrule Peterson's point of error and affirm the trial court's turnover order.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd;

    Chief Justice Carroll not participating

Affirmed

Filed: November 16, 1994

Do Not Publish

1.   Peterson's original loan transaction was actually with Texas Commerce Bank-Northcross. In June 1987, Texas Commerce Bank-Northcross was merged into Texas
Commerce Bank-Austin, National Association, which became the lawful holder of
Peterson's note.
2.   Texas Commerce foreclosed on its security interest in certain real property owned
by Peterson. However, the proceeds from the foreclosure sale were insufficient to cover
the outstanding balance on the note.
3.   Section 31.002(f) exempts from turnover "property exempt under any statute." 
Turnover Statute § 31.002(f). The Property Code exempts "current wages for personal
services." Tex. Prop. Code Ann. § 42.001(b)(1) (West Supp. 1994).
4.   The trial court's ruling on Peterson's motion for new trial is not included in the
record. We assume that the motion was overruled by operation of law pursuant to Texas
Rule of Civil Procedure 329b(c).
5.   The name of this clinic was either Austin Chiropractic Diagnostic & Treatment or
Austin Chiropractic Diagnostic Center. Peterson's testimony on this point was
inconsistent.
6.   In her will, Peterson's sister left the clinic to her children.
7.   Peterson's mother's and brother's clinics apparently occupy adjacent space in his
mother's building and share a receptionist.