# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00275-CV

**Herbert L. Wilson, Appellant**

**v.**

**Mitul Patel d/b/a Best Western Rockdale and Sai-Om, Inc., Appellees**

**FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
NO. 27,888, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Herbert L. Wilson performed odd jobs and repairs for appellees Mitul Patel d/b/a Best Western Rockdale and Sai-Om, Inc. On August 15, 2001, Wilson fell from a ladder while attempting to repair a gutter at the motel owned and run by appellees, sustaining serious injuries that required him to be airlifted to a hospital. He sued appellees for negligence and for wrongful termination. Appellees moved for summary judgment on grounds that Wilson was an independent contractor, not an employee. Following a hearing, the trial court granted summary judgment in favor of appellees and dismissed Wilson's claims with prejudice. We will affirm.

### Standard of Review

Our review of the granting of a traditional motion for summary judgment is well established: summary judgment is properly granted only when the movant establishes that there are

no genuine issues of material fact and that it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd).  A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense.  *Missouri Pac.*, 86 S.W.3d at 790.  Not until the defendant establishes its right to summary judgment does the plaintiff bear the burden of raising a fact issue.  *Id.*  In reviewing the grant of summary judgment, we take evidence favorable to the nonmovant as true and make every reasonable inference and resolve all doubts in favor of the nonmovant.  *Id.*

Whether a worker is an employee or an independent contractor is determined by whether the employer had "the right to control the progress, details, and methods of operations" of the work, meaning the employer controlled not only the end result, "but also the means and details of its accomplishment."  *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990).  This right to control is determined by factors such as: (1) the independent nature of the worker's business; (2) whether he furnished his own tools, supplies, and materials; (3) his right to control the work's progress, other than final results; (4) the time for which he is employed; and (5) whether he is paid by the job or by a unit of time.  *Limestone Prods.*, 71 S.W.3d at 312.

It is not necessary that each of the above factors be present to find that the worker is an independent contractor. *See Thompson*, 789 S.W.2d at 278-79 ("[e]xamples of the type of control normally exercised by an employer *include*" several factors later set out in *Limestone* (emphasis added)); *Shannon v. Western Indem. Co.*, 257 S.W. 522, 524 (Tex. Comm'n App. 1924, judgm't adopted) ("There are numerous evidential elements which go to determine . . . whether one is an

independent contractor or not. It is seldom or ever that any one of these elements is decisive of the question."); *Farrell v. Greater Houston Transp. Co.*, 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("occasional assertion of control" does not change nature of independent contractor relationship; "[t]he true test is the right of control; exercise of control is evidentiary only"); *Black's Law Dictionary* 612 (7th ed. 1999) (factor is a "cause that *contributes* to a particular result" (emphasis added)). An employer may give direction as to the specifications of a job, details such as the position of a structure, or the "character of materials and workmanship" and still maintain an independent contractor relationship. *United States Fid. & Guar. Co. v. Goodson*, 568 S.W.2d 443, 447 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.); *see Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (premises owner "must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability"). "Control" as would define a relationship as one of employer/employee is control over the details of the work itself and the worker's physical conduct, not simply the end result. *Goodson*, 568 S.W.2d at 447

**Discussion**

Wilson testified that he performed odd jobs around town and at the motel. He did not have a set schedule with the motel and only worked when called for a specific job. Wilson did not get paid hourly, but only after each particular job. The motel did not provide Wilson with a W-2 form, pay overtime or vacation pay, provide medical insurance, or withhold social security or taxes. Patel explained what needed to be done and usually did not watch Wilson work. Wilson used both his own tools and equipment and those of the motel. On the day of the accident, Patel asked Wilson

3

to fix a gutter that was not draining properly.  The day before, Wilson had brought his own ladder and an assistant to work on a related task, but on the day of the accident he was alone and did not bring his ladder.  Instead, he got the ladder from the motel's storage room, set it up, and started to climb.  Although Wilson said he expected Patel to come out and hold the ladder, he never asked Patel to do so, and Patel had never helped him in the past.  Wilson was on the second step when the ladder tilted, causing him to fall backwards.  Wilson did not know why the ladder wobbled, but said it might have been resting on a cord Wilson was using.  The ladder itself had no defects that would have made it tilt.

Patel testified in his deposition that Wilson performed repair and maintenance work for the motel.  Wilson did not have a written agreement with the motel, had not completed the motel's employment application, and was not on the regular payroll or paid by the hour, but per job.  When a job arose, Patel called Wilson at home to arrange a work time that would not disturb the motel's guests.  If there were several tasks, Patel told Wilson the order in which they should be done.  Patel would explain what needed to be done, and Wilson would explain what materials were necessary and give an estimated cost of labor and materials; Patel generally arranged for payment for the necessary materials, and Wilson picked them up.  The motel owned the ladder and a set of tools so that Patel and others could perform maintenance and repair work when needed.  On the day of the accident, Wilson asked to use the motel's ladder, and Patel agreed and gave Wilson a key to the room where the ladder was stored.  Wilson did not ask Patel for help, but in hindsight, Patel believed the accident could have been avoided if someone had held the ladder.  Patel did not know of any other times that anyone had fallen from the ladder or that the ladder had been out of balance.

4

The evidence in this case shows that Wilson was an independent contractor, not an employee of the motel. Wilson testified in his deposition that he was a "[j]ack of all trades" and performed "odd jobs" at the motel and at other businesses. Wilson did not have a set schedule at the motel, and worked and was paid only when a job arose. Appellees did not pay Wilson a salary or an hourly wage, give him a W-2 tax form, take out for social security, pay him overtime or vacation pay, or provide health insurance or other benefits. Patel told Wilson what tasks needed to be done and the priority they should be placed in, but did not supervise Wilson's work. Patel did not specify how Wilson was to complete a job, but instead told Wilson what the end result should be. Although Wilson worked alone and used the motel's ladder on this particular day, the day before he had brought his own ladder and his assistant to work on a related task.

Wilson argues that because Patel would give him the priority of tasks and on at least one occasion gave Wilson a suggestion on how to proceed, he exercised control over Wilson's work. However, monitoring a job's progress or giving a suggestion to ensure that the end result is adequate does not mean that Patel exercised control over the details of Wilson's physical work at the motel. *See, e.g.*, *Goodson*, 568 S.W.2d at 447. Wilson also asserts that control was shown by the fact that Patel specified that he wanted the work to be done during certain hours, to avoid disturbing guests. However, Wilson did not have regular work hours, and Patel's specifying a range of hours so as not to disturb the motel's guests is akin to requiring work to be done during an establishment's business hours. Wilson also points to testimony that Patel directed Wilson as to which rooms he could enter and at what time. The place of business was a motel, and it would be unreasonable to require that a motel operator could not give its independent contractors guidance and direction as to when a room

5

was vacant or which rooms needed repair.[1] Viewing the evidence in the light most favorable to Wilson, there is not a scintilla of evidence to indicate that his relationship with appellees was anything other than as an independent contractor.

Wilson next argues that, even if he was an independent contractor as a matter of law, appellees did not establish their affirmative defense under section 95.003 of the civil practice and remedies code. Section 95.003 provides that a property owner is not liable for injury to an independent contractor unless the owner (1) "exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports"; and (2) had actual knowledge and failed to warn of the danger or condition that caused the injury. Tex. Civ. Prac. & Rem. Code Ann. § 95.003 (West 1997).

When, as here, there is no contract giving a property owner a right of control, such a right can still be shown if there is evidence that the owner actually did exercise control over the manner in which the contractor did his work. *See Chapa*, 11 S.W.3d at 155-56 (discussing similar provisions in *Restatement (Second) of Torts* § 414); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997) (same); *Kelly v. LIN Tel. of Tex., L.P.*, 27 S.W.3d 564, 570-71 (Tex. App.—Eastland 2000, pet. denied) (discussing section 95.003). There is no evidence here that Patel exercised any control over Wilson's performance of the gutter repair or other work, other than to tell him what needed to be fixed. On Wilson's request, Patel allowed him to use the motel's ladder

---

[1] Wilson also asserts that appellees did not establish that no other tax form was provided or the details of how job payment was determined. However, the testimony showed that Wilson was paid per job, that he did not receive a W-2 tax form, that appellees did not withhold social security or taxes from his pay, and that Wilson was responsible for paying taxes himself. Appellees established that there was no fact issue as to Wilson's status, and the burden then shifted to Wilson to produce evidence raising a fact issue, if there was any such evidence. *See Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd).

because Wilson had not brought his own. As discussed above, there is no evidence that appellees exercised any actual control that would give rise to liability under section 95.003. Furthermore, there is no evidence that Patel knew of and failed to warn Wilson of any danger or condition that led to Wilson's injury. The ladder was not defective or dangerous. There were no potholes or other cause for the ground to be uneven. Wilson testified that he might have set one of the ladder's legs on top of a cord, thus causing the ladder to wobble. Patel testified that in hindsight, the accident could have been avoided had someone held the ladder. He also testified that in general he knew that it was possible to hurt oneself when climbing a ladder. However, Wilson testified to the same facts. Wilson had the same general knowledge of the possible dangers associated with the use of ladders, which is all Patel could have warned him of. In fact, the ladder itself had affixed to it a label giving the same warnings. Patel knew of no other danger or condition of which he could have warned Wilson. Appellees showed that, pursuant to section 95.003, they cannot be held liable for Wilson's injury, and Wilson failed to produce evidence showing otherwise.

The trial court did not err in granting summary judgment in favor of appellees. We affirm the judgment of the trial court.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   March 25, 2004