TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00265-CV






James Cuffee, Appellant


v.


CBL/Richland Mall, LP d/b/a Richland Mall, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT

NO. 205,461-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 James Cuffee filed a premises liability suit to recover for injuries he sustained after
falling on a stairway in a mall owned by CBL/Richland Mall, L.P. ("CBL"). The case was tried
before a jury, which entered a verdict in favor of CBL. In a single issue on appeal, Cuffee complains
that the trial court erred in excluding hearsay testimony that Cuffee contends was an admission by
a party-opponent concerning the dangerous condition of the stairs where Cuffee was injured. 
Because we conclude that the declarant was not a party-opponent and that the statement was properly
excluded as inadmissible hearsay, we will affirm the judgment.


BACKGROUND

 At the time of his accident, Cuffee was employed as a security guard by the facilities-services company, ERMC II, L.P. ("ERMC"), and was on patrol at the Richland Mall in
Waco, Texas. During his evening shift at the mall on July 31, 2002, Cuffee fell as he began to
descend a staircase. According to Cuffee's trial testimony, he approached the staircase, bypassing
a "wet floor" sign in the hallway, (1) and took a step down with his right foot when he felt himself
falling. He testified that he reached out for the handrail, but "there wasn't any for some reason," and
then fell down the steps, injuring his right knee. 

 Cuffee stated that he could not recall whether he fell forward or to his side and that
he was not sure exactly what caused him to fall. When shown photographs of the stairway taken at
some point after his accident, Cuffee agreed that the pictures showed a handrail on the right-hand
wall and black safety treads at the top of the steps. He maintained, however, that at the time of his
accident, there were no such treads on the stairs, which were instead covered in grooves or
"etchings" that were a "pinkish color." With regard to the handrail, Cuffee alternately testified that
there was no handrail in place on the night of his accident, that he could not remember whether there
was a handrail, and that, when he did reach out for the handrail, he reached to his left-hand side
(where, according to the photographs in evidence, no handrail is installed).

 Cuffee's daughter, Eva Johnson, also testified. She stated that when she heard about
her father's accident, she drove to the Richland Mall and then followed the ambulance to the
hospital. Johnson testified that while she was at the hospital, she spoke with Cuffee's supervisor,
William Gilmore. Gilmore, also an ERMC employee, was the security officer who conducted the
accident investigation after Cuffee's fall. However, the trial court sustained CBL's objections to any
further testimony from Johnson regarding her conversation with Gilmore on the basis that it was
inadmissible hearsay. In response, Cuffee made an offer of proof that Johnson would have testified
that Gilmore told her "that the steps were dangerous and that the reason for it was because of
the grooving or etching on the steps, and that [Gilmore] had almost slipped there himself
on one occasion." (2) 

 CBL's only witness was Kandice Menning, a CBL employee and the general manager
of the Richland Mall. Menning testified that ERMC is the "security, housekeeping and maintenance
contractor for the shopping center," and that Gilmore and Cuffee are both employees of ERMC. 
According to Menning, CBL has a "specific written contract" with ERMC to perform these services,
with a "contracted fee" that is adjusted on an annual basis. (3) She further testified that ERMC does
not report to her company for "routine day-to-day operational issues," but that ERMC does submit
a "monthly inspection report" on matters related to the condition of the facilities and any
investigations that it performs. When asked whether CBL dictates any particular accident-investigation techniques to ERMC, Menning stated, "We rely on ERMC." Menning also stated that
she did not know if ERMC differentiates between accidents involving tenants and those involving
customers of the shopping center when it conducts accident investigations.

 The jury returned a unanimous verdict finding that Cuffee's injuries were not the
result of CBL's negligence, and the trial court entered final judgment in favor of CBL. Cuffee's
motion for new trial was denied, and this appeal followed.



STANDARD OF REVIEW

 We review a trial court's ruling to admit or exclude evidence for abuse of discretion. 
In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005); Goodson v. Castellanos, 214 S.W.3d 741, 754
(Tex. App.--Austin 2007, pet. denied). A trial court abuses its discretion if it acts without reference
to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. 
Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a
trial court's evidentiary ruling if there is any legitimate basis in the record to support it. 
Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). We will not reverse
a trial court for an erroneous evidentiary ruling unless the error was reasonably calculated to
cause and probably did cause the rendition of an improper judgment. See Tex. R. App. P. 44.1; see
also Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). A successful challenge
to evidentiary rulings usually requires the complaining party to show that the judgment turns
on the particular evidence excluded or admitted. City of Brownsville v. Alvarado, 897 S.W.2d 750,
753-54 (Tex. 1995). 


DISCUSSION Cuffee asserts on appeal that William Gilmore's statements to Eva Johnson at the
hospital on the night of Cuffee's accident were admissions by a party-opponent under rule
801(e)(2)(D) of the Texas Rules of Evidence. Rule 801(e)(2)(D) excludes from the definition of
hearsay statements by the party's agent or servant made during the relationship concerning a matter
within the scope of the agency or employment. Tex. R. Evid. 801(e)(2)(D). Cuffee maintains that
although Gilmore was employed by ERMC, he was acting as an agent of CBL and his presence at
the hospital was in furtherance of his agency. In support of his argument, Cuffee points to evidence
that ERMC was under contract with CBL to perform security and maintenance services and that
Gilmore, a security officer, prepared ERMC's accident report, an action that was done for CBL's
benefit. Cuffee asserts that Gilmore's statements were within the scope of his agency because "part
of ERMC's authorization" from CBL was to generate and transmit investigative reports concerning
the condition of the premises, "including any dangerous conditions." Moreover, argues Cuffee,
Gilmore was "still investigating" the incident when he spoke to Johnson at the hospital, and therefore
any statements Gilmore made to her about the dangerousness of the stairs at the mall were within
the scope of his agency. CBL counters that Gilmore was not an agent but an independent contractor,
and thus none of his statements can be attributed to CBL.

 It is undisputed that Gilmore is employed by ERMC, not CBL. Therefore, in order
to admit Gilmore's statements as admissions by CBL, Cuffee must first establish that an
agency relationship existed between Gilmore and CBL. See Texas Gen. Indem. Co. v. Scott,
253 S.W.2d 651, 655-56 (1952) (fact of agency must be established before declarations can be
admitted); Moore v. Office of Atty. Gen., 820 S.W.2d 874, 877 (Tex. App.--Austin 1991, no writ)
(party asserting agency relationship has burden of proving its existence). To be an agent, a person
must (1) act for and on behalf of another person and (2) be subject to that person's control. 
Stanford v. Dairy Queen Prods., 623 S.W.2d 797, 801 (Tex. App.--Austin 1981, writ ref'd n.r.e.). 
Both elements are required; "the absence of one will prevent the conclusion that an agency
relationship exists." Id.; see also Daily Int'l Sales Corp. v. Eastman Whipstock, Inc., 662 S.W.2d
60, 64 (Tex. App.--Houston [1st Dist.] 1983, no writ) (person is not agent or servant unless subject
to another party's control); Restatement (Second) of Agency § 1 cmt. e (1958) ("'Agent' is a word
used to describe a person authorized by another to act on his account and under his control."). 

 An independent contractor, on the other hand, may act for and on behalf of another,
but since he is not under that other person's control, the relation of agency does not exist. 
English v. Dhane, 294 S.W.2d 709, 711 (Tex. 1956) (citing Bertrand v. Mutual Motor Co.,
38 S.W.2d 417 (Tex. Civ. App.--Eastland 1931, writ ref'd)); Stanford, 623 S.W.2d at 801. It is the
extent of control over the details of accomplishing the assigned task that distinguishes the
relationship of an agent and principal from that of an independent contractor and owner. 
Happy Indus. Corp. v. American Specialties, Inc., 983 S.W.2d 844, 852 (Tex. App.--Corpus Christi
1998, pet. dism'd w.o.j.); Lyons v. Lindsey Morden Claims Mgmt., 985 S.W.2d 86, 91
(Tex. App.--El Paso 1998, no pet.); McDuff v. Chambers, 895 S.W.2d 492, 497 (Tex. App.--Waco
1995, writ denied). Absent proof of control, there is no agency. St. Joseph Hosp. v. Wolff,
94 S.W.3d 513, 542 (Tex. 2002) ("The right of control is the 'supreme test' for whether a
master-servant relationship, rather than an independent contractor relationship, exists.");
Webster v. Lipsey, 787 S.W.2d 631, 635 (Tex. App.--Houston [14th Dist.] 1990, writ denied)
("essential element of proof of agency" is that alleged principal has right to assign agent's task and
to control means and details of process).

 Thus, to determine whether Gilmore is an agent of CBL, we must consider whether
CBL had the right to control the progress, details, and methods of operations of Gilmore's work. 
See Limestone Prods. Dist., Inc. v. McNamara, 71 S.W.3d 308, 312 (Tex. 2002); Newspapers, Inc.
v. Love, 380 S.W.2d 582, 585-90 (Tex. 1964). The employer must control not merely the end
sought to be accomplished, but also the means of its accomplishment as well. 
Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex. 1990); Travelers Ins. Co. v. Ray,
262 S.W.2d 801, 803 (Tex. Civ. App.--Eastland 1953, writ ref'd). Right of control is measured by
such factors as the worker's discretion over when and where to begin and stop work, the independent
nature of the worker's business, the amount of time spent on particular aspects of the work, the
worker's obligation to furnish the tools and appliances necessary to perform the work, and the
physical method or manner of accomplishing the end result. See Pitchfork Land & Cattle Co.
v. King, 346 S.W.2d 598, 603 (Tex. 1961); Farrell v. Greater Houston Transp. Co., 908 S.W.2d 1,
3 (Tex. App.--Houston [1st Dist.] 1995, writ denied); see also Thompson, 789 S.W.2d at 279;
United States Fid. & Guar. Co. v. Goodson, 568 S.W.2d 443, 447 (Tex. Civ. App.--Texarkana
1978, writ ref'd n.r.e.). 

 In applying the agency test to the facts of this case, we conclude that Gilmore was not
an agent of CBL and that Gilmore's statements cannot be attributed to CBL as admissions. As
discussed above, Cuffee needed to establish that Gilmore was acting on CBL's behalf and that CBL
had the right to control the details of Gilmore's work. See Stanford, 623 S.W.2d at 801. Assuming
arguendo that the first prong of the test has been met, Cuffee has cited no evidence that CBL exerted
any control over the manner and methods by which he performed security work, nor have we found
any such evidence from our independent review of the record.

 On the contrary, the record before us supports the conclusion that ERMC and its
security officers were merely independent contractors. As Menning testified, ERMC employees do
not report to CBL concerning routine, "day-to-day operational issues," and CBL does
not dictate any particular accident-investigation techniques to ERMC. Instead, Menning testified,
CBL "rel[ies] on ERMC." (4)

 We also note that the contract between CBL and ERMC was not admitted into
evidence, nor did any witnesses besides Menning testify concerning the nature or the terms of the
parties' agreement with respect to security and accident investigations. Thus, we can find no support
in the record for Cuffee's claim that the generation and transmission of accident-investigation reports
"was part of ERMC's authorization from Richland Mall and was included in the agency agreement." 
Cuffee failed to carry his burden and establish as a threshold matter that an agency relationship
existed between CBL and Gilmore. We therefore hold that the trial court did not abuse its discretion
in excluding Johnson's testimony regarding Gilmore's hearsay statements.


CONCLUSION

 Because the trial court did not err in excluding Johnson's testimony on the basis that
it was inadmissible hearsay, we overrule Cuffee's sole issue and affirm the judgment.


 __________________________________________

 Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 17, 2008
1. Cuffee testified, however, that there was no water or any other substance on the floor when
he fell. He also stated that he did not trip over anything on either the stair or the floor.
2. The parties have stipulated that this offer of proof was sufficient to preserve Cuffee's
complaint on appeal that Johnson's testimony was improperly excluded.
3. A copy of the contract was not offered into evidence, however.
4. Menning's testimony further suggests that CBL is not even aware of how ERMC conducts
its accident and security investigations, let alone that CBL dictates the procedures and methods that
ERMC must use. For example, she stated that although she is the general manager of the Richland
Mall, she was unaware whether ERMC has the same accident-reporting procedures for incidents
involving tenants and those involving shopping mall customers.