# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00294-CV

**ACS State Healthcare, LLC, and Conduent State Healthcare, LLC, Appellants**

**v.**

**M&M Orthodontics, PA; Dr. Scott Malone, DDS; and Dr. Diana Malone, DDS, Appellees**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-14-000321, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Conduent State Healthcare, LLC, previously known as ACS State Healthcare, LLC, ("Healthcare") appeals the trial court's denial of its plea to the jurisdiction based on the Texas Tort Claims Act ("the Act"), *see* Tex. Civ. Prac. & Rem. Code § 101.106(a) (providing for election of remedies and barring suit against employee of State when plaintiff sued State), and sovereign immunity. We affirm the trial court's Order.

## BACKGROUND

The Appellees are doctors Diana and Scott Malone and their orthodontic practice, M&M Orthodontics (collectively "the Malones"). Prior to filing their suit against Healthcare, the Malones were being investigated by the State for alleged violations of the Texas Medicaid Fraud Prevention Act and the State had initiated an administrative enforcement action against them. The State also sued multiple providers, including the Malones for the same alleged

fraudulent actions, in district court, and the providers asserted counterclaims for conspiracy, breach of contract, and conversion. *See Nazari v. State*, 561 S.W.3d 495, 497 (Tex. 2018). Healthcare is a private insurance company that contracted with the State to administer the prior-authorization program for orthodontic Medicaid reimbursement requests. The State also sued Healthcare in a separate case.

The Malones initiated this case against Healthcare and raised claims arising out of Healthcare's approving the Medicaid prior-authorization requests submitted to it by the Malones, which the Malones argued resulted in them being investigated by the State, having a Medicaid hold placed on them, and being subjected to administrative proceedings. The Malones asserted common-law fraud, multiple negligence claims, and breach of contract. The Malones' claims were premised on the allegations that Healthcare failed to correctly review the prior authorizations submitted by the Malones by having Healthcare employees who were not licensed dentists approve the requests without disclosing that procedure to the Malones and that the Malones relied on Healthcare's representations that their requests met Medicaid standards.

The Malones amended their petition to add the State as a defendant. The amended petition referred to Healthcare as both an "independent contractor" and "an agent of the State." The Malones reasserted the same claims against Healthcare as they did in their original petition and added claims against the State. The claims against the State incorporated all the same claims asserted against Healthcare but also added State-only claims. The State filed a plea to the jurisdiction asserting sovereign immunity. The trial court granted the State's plea to the jurisdiction, leaving Healthcare as the sole defendant in this case.

After settlement of the two separate cases involving the parties and the State, Healthcare filed a plea to the jurisdiction in this case asserting—as it does in its first issue on

2

appeal—that it was an agent of the State and that the Texas Tort Claims Act bars the Malones' claims in this case because the claims were already raised as counterclaims against the State in the separate case involving the Malones and the State. *See* Tex. Civ. Prac. & Rem. Code § 101.106 (creating election of remedies provision for Act, which can bar subsequent claims). The Malones argued—and contend here—that Healthcare was not an employee of the State for purposes of Medicaid prior authorization claims. *See id.* § 101.001(2) (defining "employee" for purposes of Act). Healthcare also raised a sovereign immunity argument in the trial court and in its second issue on appeal. The Malones argued, and contend here, that sovereign immunity does not apply because their claims of fraud are against Healthcare as a contractor and do not depend on allegations of fraud against the State.

In support of its plea to the jurisdiction, Healthcare presented the following evidence as exhibits: the Malones' amended petition filed in this case; its own amended answer to the Malones' amended petition in this case; the State's original petition, the providers' answer including their counterclaims, the State's plea to the jurisdiction, and the order of dismissal filed in *Nazari*; the settlement agreement between the Malones and the State; the settlement agreement between Healthcare and the State; excerpts from the Texas Medicaid Provider Manual; excerpts from the State's Request for Proposals for Medicaid; and excerpts from the State and Healthcare's service agreement.

The trial court denied Healthcare's plea to the jurisdiction. Healthcare appealed.

**PLEA TO THE JURISDICTION**

"[I]n Texas, a governmental unit is immune from tort liability and suit unless the Legislature has waived immunity." *City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007).

3

Because immunity from suit implicates a court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). Subject-matter jurisdiction is a question of law, and thus, we review a trial court's ruling on a plea to the jurisdiction de novo. *Nettles*, 606 S.W.3d at 731.

**DISCUSSION**

*Tort Claims Act*

In its first issue on appeal, Healthcare contends that the Act's election-of-remedies provision bars the Malones' suit against Healthcare.[1] *See* Tex. Civ. Prac. & Rem. Code § 101.106. The Act waives the immunity that would otherwise bar suit against a governmental unit and an employee sued in his official capacity, in certain circumstances. *See id.* § 101.025 ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."); *see also Molina v. Alvarado*, 463 S.W.3d 867, 870 (Tex. 2015). However, the Act's "election-of-remedies provision, section 101.106, effectively conditions the immunity waiver on the plaintiff's forfeiture of any negligence claims against the employee in his individual capacity." *Molina*, 463 S.W.3d at 870.

Healthcare relies on two election-of-remedies provisions. Section 101.106(a) provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the

---

[1] We assume without deciding that the Malones' claims are the types of claims that the Act would apply to if asserted against the State or its employee or agent. *See Gonzalez v. Heard, Goggan, Blair & Williams*, 923 S.W.2d 764, 766 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (focusing on whether there was question of fact as to employee or contractor status of appellee law firm in case involving negligence and negligent misrepresentation under Tort Claims Act).

4

plaintiff against any individual employee of the governmental unit regarding the same subject matter." Section 101.106(c) provides that "[t]he settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter." The Act defines "employee" as:

> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Tex. Civ. Prac. & Rem. Code § 101.001(2). The parties disagree on whether Healthcare was an "employee" under the above definition and thus whether the elections-of-remedies requirement applies to the Malones' suit against Healthcare.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, both the trial court and the appellate court consider the relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. When, as here, the jurisdictional facts challenged implicate the merits and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *See Miranda*, 133 S.W.3d at 227; *see also Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) (explaining that "[t]he existence of a legal duty is a question of law for the court although in some instances it may require the resolution of disputed facts or inferences which are inappropriate for legal resolution"); *City of Austin v. Saverse*, No. 03-11-00330-CV, 2011 WL 4507268, at *2 (Tex. App.—Austin Sept. 30, 2011, pet. denied) (mem. op.) (holding that whether city was grossly negligent implicated merits); *cf. University of Tex. v. Poindexter*, 306 S.W.3d 798, 806 (Tex.

5

App.—Austin 2009, no pet.) (holding that filing-deadline issue in employment-discrimination case did not implicate merits). When the relevant evidence is either undisputed or fails to raise a fact question on the jurisdictional issue, the plea is decided as a matter of law. *Miranda*, 133 S.W.3d at 228. However, "[i]f the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28.

We review an order on a plea to the jurisdiction that challenges the existence of jurisdictional facts that implicate the merits similarly to that of a summary judgment—that is, taking all evidence favoring the plaintiff as true, indulging reasonable inferences, and resolving doubt in favor of the plaintiff. *See id.* at 228; *Nettles*, 606 S.W.3d at 734. Thus, it is Healthcare's burden to present conclusive proof that the trial court lacks subject-matter jurisdiction. *See Olivares v. Brown & Gay Eng'g, Inc.*, 401 S.W.3d 363, 369–70 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 461 S.W.3d 117 (Tex. 2015) (citing *Miranda*, 133 S.W.3d at 228).

Here, the dispositive issue is whether Healthcare was an independent contractor or an agent of the State for purposes of Medicaid prior authorizations. Healthcare points out that it was performing services peculiar to the State's business of Medicaid prior authorizations. While such a fact may establish a prima facie employer-employee relationship absent other evidence to the contrary, it does not do so when the parties have entered into a written contract that expressly provides for an independent-contractor relationship and the contract does not give the employer the right to control the details of the work. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591-92 (Tex. 1964). Thus, we must look to the contract terms.

6

The contract is made up of an Administrative Services Agreement (Agreement), which incorporated the State's request for vendor proposals (Proposal Request). Collectively the two documents refer to Healthcare as both "Contractor," and "agent." Healthcare cites in support a section from the Proposal Request that states, "The vendor serves as the administrative agent of the State." Healthcare also contends that the inclusion of an Agreement provision that states, "Except as expressly provided in this Agreement or as agreed by [the Texas Health and Human Services Commission (HHSC)], neither CONTRACTOR nor any of CONTRACTOR's employees, subcontractors or agents may act in any sense as agents or representatives of HHSC or the State of Texas," implies that there were ways in which the contract provided for an agency relationship.

However, the Agreement also states that "Contractor" was not an agent of the state agency that is charged with processing Medicaid claims in Texas:

Section 10.19 Liability for employment-related charges and benefits.

CONTRACTOR will perform work under this Agreement as an independent contractor and not as agent or representative of HHSC. CONTRACTOR is solely and exclusively liable for all taxes and employment-related charges incurred in connection with the performance of this Agreement. HHSC will not be liable for any employment-related charges or benefits of CONTRACTOR, such as overtime, workers compensation benefits, unemployment insurance and benefits, or fringe benefits.

A written contract that expressly provides for an independent-contractor relationship is generally determinative of the issue absent other evidence indicating that the contract was subterfuge, that the hiring party exercised actual control, or if the written contract was modified by subsequent agreement. *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—

7

Houston [14th Dist.] 2000, no pet.) (citing *Love*, 380 S.W.2d at 590). Here, the contract provisions stating that "[Healthcare] will perform work under this Agreement as an independent contractor and not as [an] agent," and that the State is not liable for any employee benefits is evidence favoring the Malones' position that Healthcare was an independent contractor. *See Olivares*, 401 S.W.3d at 371 (holding that consulting firm was independent contractor and not employee of state when contract stated firm was not employee, had no employment benefit rights, and no actual control over details of work was shown, even when contract reserved final approval and control of end product by governmental unit).

Healthcare further contends that the contract gave the State the right to control the work being done by Healthcare in a way that made it an agent under the contract. Under the right-to-control test, to determine if a worker is an employee, we look at whether under the contract terms the State had the right to control "the progress, details, and methods of operations," and "not merely the end sought to be accomplished." *Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277, 278 (Tex. 1990). "Examples of the type of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result." *Id.* at 278–79.

Healthcare contends that the following Agreement provisions establish an employer-employee relationship by granting the State the right to control the details of Healthcare's work:

> In particular, CONTRACTOR acknowledges its understanding of HHSC's desire
> to achieve the following primary Mission Objectives:

8

. . . .

> Establish an effective, efficient, and flexible relationship between HHSC and CONTRACTOR under which CONTRACTOR will be highly responsive to the needs and requests of HHSC and to changes in methods and strategies for providing the Services.

. . . .

> CONTRACTOR may not rely upon implied authority, and specifically is not delegated authority under this Agreement to:

> (1) Make public policy;

> (2) Promulgate, amend or disregard administrative regulations or program policy decisions made by State and federal agencies responsible for administration of the Medicaid program . . . .

In further support, Healthcare also cites the following Proposal Request provisions:

> Vendor supports development of Medical/Dental Policy under the direction of the State. The State retains approval authority for all health care policy.

. . . .

> The State will:

> Review and approve all Vendor proposed medical criteria . . . used to authorize services that require prior authorization.

> Review and approve the Vendor recommended format of all PA request forms and related material.

. . . .

> The State must review and approve the format for the notification letters to clients and providers.

. . . .

> For clients eligible for services under the EPSDT/THSteps/CCP and other programs, prior authorization requests for new treatments must be reviewed on a case-by case basis and in a manner directed by the State.

. . . .

> The State will: . . . Conduct monitoring to ensure Vendor compliance with State approved PA appropriateness.

> The Vendor will submit to the State a list identifying the individuals (by name) responsible for performing PA activities and the types of services for which each individual is responsible. The initial list must be submitted within six months of contract award and thereafter as staffing changes.

However, the Agreement also states that Healthcare's employees are not employees of the State and "remain[ed] under [Healthcare]'s sole direction and control." We cannot conclude on this record that Healthcare has conclusively proven that it was an agent under the contract considering the contract's express statements that Healthcare and its employees were not agents or employees of the State. The level of control the contract gives the State does not conclusively rise to the level of controlling "the progress, details, and methods of operations," rather than "merely the end sought to be accomplished." *Thompson*, 789 S.W.2d at 278. Rather, there is at least a fact issue regarding the intent of the contracting parties regarding the type of relationship created.

Healthcare contends that it must have been an agent of the State because state and federal law require it. Assuming without deciding that state and federal law require that Healthcare be an agent of the State, this requirement does not resolve the fact issue. Healthcare's contention that federal law required the State to contract for an agent relationship does not change the analysis of what the parties contracted for or otherwise provide conclusive proof of the requisite level of control by the State. *See Love*, 380 S.W.2d at 590 (directing focus for employment-relationship type on "right to control" within parties' contract and allowing for

10

presentation of evidence of "exercise of control" to demonstrate "right to control"); *Olivares*, 401 S.W.3d at 369 (explaining that "movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction" (citing *Miranda*, 133 S.W.3d at 228)).

Healthcare also contends that the Malones judicially admitted in their live pleadings—their amended petition—that Healthcare was an agent of the State. Indeed, "[a]ssertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Houston First Am. Savs. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). However, the Malones' amended petition refers to Healthcare as both an agent and independent contractor, and they raised two sets of claims against the State covering both an agent and an independent-contractor relationship. The petition also only addresses sovereign immunity as to the Malones' claims against the State, not their claims alleged against Healthcare. We conclude that the Malones did not judicially admit that Healthcare was the State's agent. *Cf. Miranda*, 133 S.W.3d at 226 (explaining that when plea to jurisdiction challenges claimant's pleadings, appellate courts liberally construe pleadings in favor of claimant to determine whether claimant has pleaded facts that affirmatively demonstrate trial court's jurisdiction).

Considering the applicable standard of review and indulging every reasonable inference and resolving any doubt in the nonmovants' favor, we conclude that Healthcare did not conclusively establish that it was an agent of the State and that the trial court lacked subject-matter jurisdiction. *See Gonzalez v. Heard, Goggan, Blair & Williams*, 923 S.W.2d 764, 766 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) (reversing summary judgment granted to movant law firm because "there [was] at the very least a question of fact as to the status of the appellee law firm" regarding whether it was "an independent contractor or an agent/employee").

11

Because we conclude that Healthcare did not conclusively establish the trial court's lack of jurisdiction, the burden does not shift to the Malones to raise a fact issue. *See Olivares*, 401 S.W.3d at 370 (citing *Miranda*, 133 S.W.3d at 228).

We conclude that the trial court did not err in denying the plea to the jurisdiction on this ground. *See Nettles*, 606 S.W.3d at 731 ("Because subject-matter jurisdiction is a question of law, we review de novo a trial court's ruling on a plea to the jurisdiction."). We overrule Healthcare's first issue.

## SOVEREIGN IMMUNITY

In its second issue, Healthcare contends that common-law sovereign immunity bars the Malones' claims. This contention is based on a challenge to the Malones' pleadings.

When, as here, the plea to the jurisdiction challenges the pleadings, we must "determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *See Miranda*, 133 S.W.3d at 226 (quotation marks omitted). In doing so, "[w]e construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.*

Healthcare cites *Nettles* in support of its contention that the Malones' claims are barred by sovereign immunity. *See* 606 S.W.3d at 738–39. In *Nettles*, the Supreme Court held that the plaintiff's conspiracy and aiding-and-abetting claims against GTECH—a company contracted by the State to assist with production and distribution of lottery tickets—implicated the State's sovereign immunity because the claims required the plaintiff to prove that the Texas Lottery Commission had acted fraudulently within its delegated powers and thus, GTECH was entitled to immunity regarding those two claims. *Id.* However, GTECH was not entitled to

12

sovereign immunity regarding Nettles' fraud claims against GTECH for GTECH's own actions. *Id.* at 738. Thus, the holding in *Nettles* provides for a limited extension of sovereign immunity to State contractors for plaintiffs' claims that are dependent on proving that the State's "actions within its delegated powers were fraudulent." *Id.* at 739.

Here, Healthcare contends that the Malones' claims are dependent on allegations of fraud committed by the State and that such claims are barred by sovereign immunity pursuant to the holding in *Nettles*. The Malones respond that Healthcare is mischaracterizing their remaining claims against Healthcare, which they contend are based on Healthcare's fraudulent activity and not dependent on the State's actions.

Healthcare contends that because the injury that the Malones allege Healthcare caused is the enforcement actions by the State, the Malones' claims depend on the State's actions being fraudulent. We disagree with this interpretation of the Malones' claims against Healthcare. In support of this issue, Healthcare cites to portions of the Malones' amended petition that make up the facts section and the conclusion. These sections, which collectively address the Malones' allegations and claims against both Healthcare and the State, do include allegations of fraudulent acts by the State. However, notably, the Malones' claims against the State were dismissed by the trial court and are no longer part of this case. The Malones' remaining claims are those against Healthcare that allege that Healthcare was negligent, fraudulent, and misleading in its own actions, not necessarily directed by the State and not dependent on whether the State's enforcement was proper or fraudulent in any way. The Malones' surviving claims allege that Healthcare breached its duties to the Malones when it approved their prior-authorization requests, which the Malones allege they relied on to their detriment when they provided the preauthorized orthodontic services thinking they met the

13

Medicaid requirements, and that Healthcare's prior-authorizations resulted in the State's enforcement action against the Malones and caused the Malones alleged damages. Unlike the plaintiff in *Nettles*, the Malones' remaining claims are not reliant on asserting that the State directed Healthcare to act fraudulently. The Malones' current claims are not necessarily challenging the propriety of the State's enforcement actions.

Considering the applicable standard of review and construing the Malones' pleadings liberally in their favor, *see Miranda*, 133 S.W.3d at 226, we conclude that their claims against Healthcare alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear this cause. We overrule Healthcare's second issue.

## CONCLUSION

Because we have overruled Healthcare's issues, we affirm the trial court's order denying Healthcare's plea to the jurisdiction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Smith and Theofanis
  Dissenting Opinion by Justice Theofanis

Affirmed

Filed: August 15, 2024