## SOUTHERN UNDERWRITERS v. FREEMAN.

### No. 3322.

Court of Civil Appeals of Texas. Beaumont. June 15, 1938.

Rehearing Denied June 22, 1938.

J. J. Collins, of Lufkin, Moseley & Roberts, of Longview, Clyde E. Smith, of Woodville, and Battaile, Burr & Holliday, of Houston, for plaintiff in error.

C. C. Hightower, of Woodville, and A. Armstrong, of Dallas, for defendant in error.

O'QUINN, Justice.

This is a compensation suit: Appellee, C. W. Freeman, was the employee; appellant, The Southern Underwriters, the alleged compensation insurance carrier; Neches Lumber Company, the alleged employer. On trial to a jury judgment was entered in appellee's favor for compensation for 130 weeks at $9 per week. Appellant has duly prosecuted its appeal to this court from the judgment of the lower court.

Appellant was the compensation insurance carrier of Neches Lumber Company. We sustain the proposition that, at the time appellee was injured, he was not the employee of Neches Lumber Company, but an employee of one John W. Dean who, as an independent contractor under Neches Lumber Company, had a contract with Neches Lumber Company to stack its lumber.

On the issue of Dean's relation to Neches Lumber Company, its vice-president and general manager, C. H. Caskey, testified:

"Q. Now then in January or February of 1936, did you have occasion to meet a man by the name of Mr. John Dean? A. Yes, sir.

"Q. Tell the jury, Mr. Caskey, where you first met Mr. Dean. A. I met Mr. Dean—it is about five miles northeast of Henderson. I went up one night and hired Mr. John W. Dean.

"Q. Now then tell the jury what conversation you had with Mr. Dean and what conversation he had with you? A. I hired Mr. Dean to stack lumber. We had been having considerable trouble finding lumber stackers that had experience. In fact, we had several hundred thousand feet of lumber on our yard at the time that had been improperly stacked, and Mr. Dean had been recommended to me as an experienced lumber stacker. In fact, he had been stacking lumber, they claimed, for about thirty years, so I went to see Mr. Dean and I hired him away from another mill up northeast of Henderson and I gave Mr. Dean a contract for stacking our lumber, taking it from the mill, putting it through the kiln, and taking it down at a specified price, and he was to furnish his own labor, and he came down, I think it was, the next two or three days and brought several men with him.

"Q. And what was the contract price at first? A. The contract price at first, as I recall, was seventy-five cents a thousand."

The contract price for stacking the lumber was later increased to $1 per thousand and then to $1.25 per thousand. Caskey was the only employee of Neches Lumber Company with authority to hire and fire its employees; he did not employ appellee, and never talked to him about working for Neches Lumber Company; quoting further from Caskey's testimony:

"Q. Was John Dean a foreman or hired there to do this work by virtue of that contract that you described? A. John Dean was independent of the foremen. He had the stacking contract. He could hire his men at will and fire them at will.

"Q. In carrying out this contract, did you reserve the right to hire or fire Mr. Dean's men or what are the facts as to that? A. No, sir, I didn't direct Mr. Dean's men or hire his men at any time. That was his duty.

"Q. And did you attempt to fire any of his men? A. No, sir.

"Q. Did you or the Neches Lumber Company pay any of his men? A. No, sir. John Dean is paid in full and he himself paid his own men.

"Q. Now then did you have an understanding with Mr. Dean that you would help finance any of his men through the commissary? A. We maintain a commissary for the use of the men and Mr. Dean's men would trade at the commissary, but Mr. Dean would stand responsible for all goods that were bought by his men and clothes, and we didn't sell to Mr. Dean's men.

"Q. And did the Neches Lumber Company have an arrangement whereby they would ever advance any cash to Mr. John Dean's men? A. Except on Mr. Dean's request and his okeh."

On request of Mr. Dean, Neches Lumber Company would advance his employees money, and charge it to him; these advances were charged against Mr. Dean's account for stacking the lumber. Quoting again from Caskey's testimony:

"Q. Now then did any man connected with the Neches Lumber Company have any authority to direct or control Mr. John Dean's men in stacking that lumber? A. No, sir, except as to where they might put it, but the directing was done through Mr. Dean; not his men. He directed his own men at all times.

"Q. And did you do anything on earth besides telling Mr. Dean where to stack the

lumber? Is that all the control you exercised over Mr. Dean? A. That is all.

"Q. Is it true that the Neches Lumber Company would come over and borrow one of Mr. Dean's employees? Did they do that? A. Sometimes.

"Q. And on those occasions, Mr. Caskey, would the Neches Lumber Company then pay that man for working for them? A. Yes, sir."

Appellee was injured while in the course of his employment with Dean—while stacking lumber for Mr. Dean. Again quoting from Caskey's testimony:

"Yes, sir.

"Q. And did you have anything to do whatever with employing Mr. Freeman to do that kind of work? A. No, sir.

"Q. Now did you tell Mr. John Dean what kind of methods to use in stacking that lumber? A. No, sir. I figured Mr. John Dean knew more about stacking lumber than I did. That was his business.

"Q. Is that one of the reasons why you employed him, because he was a skilled man in that kind of business? A. Yes, sir."

It would serve no useful purpose to quote from Mr. Dean's testimony, because on this issue he corroborates in every respect the testimony of Mr. Caskey. We quote as follows from appellee's testimony:

"Q. Now you pointed out about three or four times that somebody other than John Dean told you what to do when your lawyer was questioning you? A. I believe two, as well as I remember.

"Q. Two. All right. All the other times you were under the directions of John Dean? He told you what to do. A. Yes.

"Q. And you looked to him to receive instructions as to what to do all the time, didn't you? A. Yes, sir.

"Q. Now when you claim you got hurt that was doing work under John Dean's orders, wasn't it? A. Yes, sir.

"Q. In other words, you were working under that contract that John Dean had, isn't that right? A. Yes, sir.

"Q. And drawing your pay, weren't you? A. Yes, sir.

"Q. And the Neches Lumber Company and nobody except John Dean was telling you what to do out there, were they, when you were out there trying to push that car? A. There wasn't anybody telling me what to do more than we knew our jobs. It was a regular job.

"Q. You knew your job and that was part of your job of stacking that lumber? A. Yes, sir.

"Q. Part of that job that John Dean had the contract for? A. Yes, sir."

"Q. Now then, the occasion leading to your doing some work out here was the fact that Mr. Dean brought you down here, wasn't it? Didn't he bring you down here? A. Yes, sir, he brought me down to the job.

"Q. Where did he find you up at Henderson? A. I was working for him at Henderson.

"Q. And he brought you down here? A. Yes, sir.

"Q. And he hired you? A. Yes, sir.

"Q. And you didn't talk to a solitary soul connected with the Neches Lumber Company about putting you to work, except the man John Dean, did you? A. Well, let's see if I understand that right.

"Q. Well, when you came down here to work, did you talk to Mr. Caskey? A. No, sir.

"Q. And John Dean put you to work, didn't he? A. Yes, sir.

"Q. And he told you how much he would pay you? A. Yes, sir."

As we construe the undisputed testimony in this case, Dean was an independent contractor, holding under Neches Lumber Company a contract to stack its lumber. Under the undisputed testimony, it is our further conclusion that appellee was an employee of Dean and not of Neches Lumber Company; he had no contractual relation whatever with Neches Lumber Company, he was employed by Dean, paid by Dean, and his work was supervised by Dean. Occasionally he did work for Neches Lumber Company under a special contract whereby Neches Lumber Company paid him for his services; while working for Neches Lumber Company, the time was charged against Neches Lumber Company and not against Dean. The authorities support us in this construction of the testimony. Lone Star Gas Co. v. Kelly, Tex. Com.App., 46 S.W.2d 656; Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522; Tilling v. Indemnity Ins. Co., Tex.Civ.App., 283 S.W. 565; Kirby Lumber Co. v. McGilberry, Tex.Civ.App., 205 S.W. 835; Laird v. Utilities Ins. Co., Tex.Civ.App., 99 S.W.2d 627; Jones-O'Shaughnessy Lumber Co. v. Bond, Tex. Civ.App., 79 S.W.2d 649; Texas Reciprocal

Ins. Ass'n v. Latham, Tex.Civ.App., 72 S. W.2d 648.

It follows that the judgment of the lower court must be reversed and judgment here rendered for appellant, and it is so ordered.

Reversed and rendered.