**TRAVELERS INS. CO. v. RAY.**

No. 3046.

Court of Civil Appeals of Texas.

Eastland.

Nov. 13, 1953.

Rehearing Denied Dec. 11, 1953.

Wagstaff, Harwell, Wagstaff & Alvis, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

LONG, Justice.

This is a Workmen's Compensation case. The Texas Company, through its zone manager, T. L. Thompson, entered into a written contract with J. M. Caldwell, a painting contractor, whereby Caldwell agreed to paint a Texas Company Service Station in Stamford, Texas, according to certain specifications for an agreed price of $237.50. Elco Ray, while working as a painter on said service station sustained a personal injury. Travelers Insurance Company carried workmen's compensation insurance on employees of the Texas Company. Elco

Ray instituted this suit against Travelers Insurance Company alleging that at the time of his injury he was an employee of the Texas Company. The insurance company denied that Ray was an employee of the Texas Company and alleged he was in the employ of J. M. Caldwell, an independent contractor. The jury, in answer to special issues, found that Ray was an employee of the Texas Company and that he was in the course of his employment at the time he was injured. Based upon these findings, judgment was entered in favor of Ray, from which judgment the insurance company has appealed.

Appellant filed motions for an instructed verdict and for judgment non obstante veredicto and contends here the court erred in overruling said motions. It is the contention of appellant that the undisputed evidence shows, as a matter of law, that appellee was not an employee of the Texas Company at the time of his injury but, on the contrary, was an employee of J. M. Caldwell, an independent contractor.

Appellee contends this was a fact question for the determination of the jury.

The contract between the Texas Company and Caldwell whereby Caldwell agreed to paint the service station where appellee was injured provides, in part, as follows:

"(10) Company shall have no voice in the selection, discharge, supervision, or control of contractor's servants, representatives, or sub-contractors, or in fixing their number, compensation, or period of hours of service; nor shall it have any right to direct or instruct contractor in the method of performance of the means of accomplishing the desired results except to the extent that a particular method is specified in this contract or in any specifications which are made a part hereof."

The contract further provided that Caldwell was to carry workmen's compensation insurance. At the time appellee was injured Caldwell had only two people working for him painting service stations and did not carry workmen's compensation insurance.

The evidence is undisputed that Caldwell employed appellee. Appellee testified that he was to be paid $1.75 per hour. The Texas Company furnished the materials that were used in painting the service station. Caldwell furnished all tools, ladders, scaffolds and other things needed in carrying out the work. There is evidence that Caldwell had painted a number of service stations for the Texas Company under similar contracts to the one involved here.

Appellee testified that Thompson, zone manager for the Texas Company, was not at the service station in Stamford when he was working there. He testified that on a prior occasion at Snyder, where he was assisting Caldwell in painting a service station for the Texas Company, that Thompson appeared and directed appellee to put more paint on a warehouse base and stood and watched him do it. Appellee further testified that Thompson would give instructions and orders even though Caldwell was present at the time. Thompson, zone manager for the Texas Company, when being examined as to the control exercised by him over the men working for Caldwell on these painting jobs, testified as follows:

"Q. Now, you did check on these paint jobs that were being done on the Texas Company filling stations from time to time as the work progressed, did you not? A. Yes, I have.

"Q. And if they were not using the paint in the right ratio or the right color, why you made them change it didn't you? A. I told Caldwell it was wrong and I told him how it should be done.

"Q. You told him how it should be done? A. Right.

"Q. And saw to it that he did it right, didn't you? A. Yes.

"Q. That was part of your job wasn't it? A. Yes."

█ The evidence discloses that the Texas Company is a nationally known, well advertised, distributor of petroleum products; that its distinctive green and white service stations are known all over the country and they are known and distinguished more readily by their colors; that all of their service stations were painted in this manner. We have concluded from a careful examination of the evidence that Ray was not an employee of the Texas Company within the meaning of the Workmen's Compensation Act, Articles 8306, 8309, Vernon's Annotated Revised Civil Statutes, when he was injured.

█ To constitute one an employee within the meaning of the compensation laws, there must exist between the parties the relationship of master and servant in the broad sense that the one has the right of ultimate control and direction over the other. The relation of master and servant exists where the master retains or exercises the power of control in directing not merely the end sought to be accomplished but as well the means and details of its accomplishment; not only what should be done but how it should be done. Under the contract between the Texas Company and Caldwell, the Texas Company had no right of control over a person employed by Caldwell. It is true that the Texas Company had the right under the contract to supervise the work in order to see that it was done according to the specifications in the contract. There is no evidence that tends to show that the contract was other than what it purported to be—a true expression of the business relationship existing between Caldwell and the Texas Company. There is no instance shown where the Texas Company did anything inconsistent with the terms of the contract. The acts of Thompson as detailed by appellee and as testified to by Thompson, are not such as would tend to show that he was exercising control over the people working for Caldwell, in directing them as to the way and manner the work should be performed. As said by the court in Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449, 451:

"The mere right of a person who has let out a contract, to supervise the work in such a way as to see that it is performed according to contract, does not make the employees of the contractor his employees. Simonton v. Perry (Tex.Civ.App.) 62 S.W. 1090; Smith v. Humphreyville, 47 Tex.Civ.App. 140, 104 S.W. 495, writ of error refused; American Indemnity Co. v. Dinkins (Tex.Civ.App.) 211 S.W. 949, writ of error refused."

We believe that Ray was, as a matter of law, not an employee of the Texas Company but, on the contrary, that he was an employee of Caldwell, an independent contractor, and that the court erred in refusing to instruct a verdict for appellant. The following authorities support our conclusion: Consolidated Underwriters v. Lowrie, Tex.Civ.App., 128 S.W.2d 421; Southern Underwriters v. Freeman, Tex.Civ.App., 118 S.W.2d 367; Southwestern Telegraph & Telephone Co. v. Paris, 39 Tex.Civ.App. 424, 87 S.W. 724; Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S.W.2d 7; United States Fidelity & Guaranty Co. v. Hall, Tex.Civ.App., 224 S.W.2d 268; Lone Star Gas Co. v. Kelly, Tex.Com.App., 46 S.W.2d 656.

The judgment of the trial court is reversed and here rendered for appellant.