COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


**NO. 2-07-150-CV**

I GOTCHA, INC.,                                                                                    APPELLANT
D/B/A ILLUSIONS

V.

TEXAS ALCOHOLIC                                                                              APPELLEE
BEVERAGE COMMISSION

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two issues, appellant I Gotcha, Inc. d/b/a Illusions (Illusions) appeals

from the trial court's final judgment affirming appellee Texas Alcoholic Beverage

Commission's (TABC) imposition of a $13,500 civil penalty for violations of the

Texas Alcoholic Beverage Code (the "Code").  We affirm.

------------

[1] TEX. R. APP. P. 47.4.

## II.  Background

Illusions, a topless bar in Fort Worth, is the holder of a mixed beverage permit and a mixed beverage late hours permit issued by TABC.  These permits were originally issued by TABC on December 16, 1983, and have been continually renewed.

On February 12, 2005, Taquisha Lawson was working as a dancer at Illusions under the stage name "Sassy."  On that date, at about 9:00 p.m., TABC agents Brian Miers and Ralph May entered the premises in an undercover capacity and sat at a table in an open area of the club near the stage.

While seated, Miers and May were approached by Lawson, who joined them at the table and inquired as to why Miers and May were at Illusions that night.  Miers responded that they were "looking for some kind of an after party."  Lawson and Miers then engaged in a conversation wherein Lawson told Miers that she was getting off work at 2:00 a.m, Miers told Lawson that he and May had a hotel room in town, and Miers invited Lawson to their hotel room after she got off work.  Lawson told Miers it would cost him $400 an hour for both Miers and May, but that she would "give them all the . . . they could handle."[2]  In Lawson's presence, Miers leaned over to May and relayed

---

[2] In order not to offend the reader, we have left out the explicit language  Lawson allegedly used.

the details of the conversation; all three nodded their heads in agreement. Thereafter, Miers told Lawson that he and May were leaving to meet up with some friends, but that someone would be back to pick her up. Lawson told the agents that if they did not return to pick her up, they "would miss out on one good [thing]."

Immediately thereafter, Miers and May left Illusions and contacted their arrest team. Miers detailed the evidence supporting a prostitution charge against Lawson and provided a description of Lawson's appearance, including skin color, hair style, clothing, and identifying jewelry. The arrest team entered Illusions, obtained a digital photograph of Lawson, and returned to Miers to confirm through picture identification that they had located the right individual. The arrest team then arrested Lawson for solicitation.

On December 15, 2005, the TABC issued Illusions a notice of hearing charging,

> The place or manner in which [Illusions] conducts its business warrants the cancellation or suspension of the permit and/or license based on the general welfare, health, peace, morals and safety of the people and on the public sense of decency in violation of §§ 11.61(b)(7) and/or 61.71(a)(17) [of the Code].

The notice alleged that

> On or about February 12, 2005, [Illusions] and/or its agent, servant, employee, Taquisha Lawson, and/or some other person, on the licensed premises, offered to engage or agreed to engage in sexual

3

conduct for a fee in violation of § 43.02(a)(1) of the Texas Penal Code and/or § 104.01(7) of the Texas Alcoholic Beverage Code and/or § 35.31(a)(b)(1)(c)(12) of the Texas Alcoholic Beverage Commission Rules.

On May 8, 2006, an administrative law judge at the State Office of Administrative Hearings (the "ALJ") held a hearing at which Miers and Illusions's owner, Walt Duncan, testified. Lawson was not cited and did not appear at the hearing. Documentary evidence of Illusions's Code violation history and its independent investigation into the incident was introduced.

Approximately two months later, on July 10, 2006, the ALJ issued a proposal for decision, concluding in relevant part that "[Illusions's] employee, on the licensed premises, offered and agreed to engage in sexual conduct for a fee, in violation of [sections 11.61(b)(7) and 104.01(7) of the Code]." The ALJ recommended a sixty day suspension of Illusions's permits or, in lieu of suspension, a $13,500 civil penalty. Subsequently, on October 30, 2006, TABC issued a final order adopting the ALJ's July 10, 2006 proposal and ordered Illusions's permits suspended for a period of sixty days beginning on January 3, 2007, unless Illusions paid a $13,500 civil penalty to TABC on or before 12:01 a.m. on December 27, 2006.

Thereafter, Illusions filed all necessary notices and requests for reconsideration and a petition for judicial review. [AE x] The trial court

4

conducted a hearing on Illusions's petition for review and on April 5, 2007, signed an order affirming TABC's October 30, 2006 final order. This appeal followed.

### III. Standard of Review

We review an administrative ruling of the TABC under the substantial evidence rule.[3] Generally speaking, a court reviewing an administrative action under the substantial evidence rule is only concerned with the reasonableness of the administrative order, not with its correctness.[4] An administrative decision is reasonably supported by substantial evidence if the evidence as a whole is such that reasonable minds could have reached the same conclusion that the agency reached.[5] The rule is designed to discourage courts from administering regulatory statutes enacted by the legislature.[6]

---

[3] *See* TEX. ALCO. BEV. CODE ANN. § 11.67(b)(Vernon 2007); TEX. GOV'T CODE ANN § 2001.175 (Vernon 2000); *see also Tex. Alcoholic Beverage Comm'n v. Wishnow*, 704 S.W.2d 425, 427 (Tex. App.—Houston [14th Dist.] 1985, no writ).

[4] *See Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex. 1984)(citing *Gerst v. Nixon,* 411 S.W.2d 350, 354 (Tex. 1966)); *Cent. Power & Light v. Public Util. Comm'n*, 36 S.W.3d 547, 561 (Tex. App.—Austin 2000, pet. denied).

[5] *Tex. State Bd. of Med. Examiners v. Birenbaum,* 891 S.W.2d 333, 337 (Tex. Civ. App.—Austin 1995, writ denied).

[6] *Lewis v. Metropolitan S. & L. Ass'n,* 550 S.W.2d 11, 13 (Tex. 1977).

A court may not invade the fact finding authority of an administrative agency.[7] Nor may a court substitute its judgment for the agency's on the weight of the evidence on questions committed to agency discretion.[8] A reviewing court may only determine whether the contested order is reasonably supported by substantial evidence.[9]

An agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion the agency must have reached in order to justify its action.[10]

An agency's findings and conclusions are presumed to be supported by substantial evidence, and the burden is on the opponent to prove otherwise by showing that no substantial evidence existed at the time of the hearing to support the order.[11] Finally, we must uphold the agency's decision even if the evidence actually preponderates against the agency's finding so long as enough

---

[7] *State Banking Bd. v. Allied Bank Marble Falls,* 748 S.W.2d 447, 448 (Tex. 1988).

[8] *See* TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2000); *see also Auto Convoy Co. v. R.R. Comm'n of Tex.,* 507 S.W.2d 718, 722 (Tex. 1974).

[9] *Auto Convoy Co.,* 507 S.W.2d at 722.

[10] *Suburban Util. Corp. v. Pub. Util. Comm'n of Tex.,* 652 S.W.2d 358, 364 (Tex. 1983).

[11] *Imperial Am. Res. Fund v. R.R. Comm'n of Tex.,* 557 S.W.2d 280, 286 (Tex. 1977).

evidence suggests the agency's determination was within the bounds of reasonableness.[12]

### IV. Substantial Evidence

In its first issue, Illusions asserts that the trial court erred in sustaining the ALJ's finding that Illusions violated sections 11.61(b)(7) and 104.01(7) of the Code. Specifically, Illusions contends that there was no substantial evidence to support a finding that Lawson was an employee of Illusions, that Lawson solicited Miers and May, or that the place or manner in which Illusions conducts its business warranted suspension of its permits.

In order to prevail on its complaint, TABC had to establish by substantial evidence that Illusions violated sections 11.61(b)(7) and 104.01(7) of the Code. Those sections provide as follows:

> § **11.61.   Cancellation or Suspension of Permit**
>
>  . . . .
>
>> (b)   The commission or administrator may suspend for not more than 60 days or cancel an original or renewal permit if it is found, after notice and hearing, that any of the following is true:
>>
>>  . . . .

---

[12] *Gerst v. Goldsbury,* 434 S.W.2d 665, 667 (Tex. 1968); *see also Sw. Pub. Serv. v. Pub. Util. Comm'n of Tex.,* 962 S.W.2d 207, 215 (Tex. App.—Austin 1998, pet. denied).

(7) the place or manner in which the permittee conducts his business warrants the cancellation or suspension of the permit based on the general welfare, health, peace, morals, and safety of the people and on the public sense of decency.[13]

## § 104.01. Lewd, Immoral, Indecent Conduct

No person authorized to sell beer at retail, nor his agent, servant, or employee, may engage in or permit conduct on the premises of the retailer which is lewd, immoral, or offensive to public decency, including, but not limited to, any of the following acts:

. . .

(7) permitting solicitations of persons for immoral or sexual purposes.[14]

### A. "Employee"

Illusions contends that the substantial evidence does not support a finding that Lawson was an employee of Illusions. Illusions asserts that Lawson was an independent contractor.

The primary distinction between an independent contractor and an employee is that the independent contractor merely agrees to accomplish results, whereas an employee yields control over his or her time and physical

---

[13] TEX. ALCO. BEV. CODE ANN. § 11.61(b)(7) (Vernon 2007).

[14] *Id.* at § 104.01(7) (Vernon 2007).

8

activities to the employer.[15]  The term "employee" is not defined in the Code.

Therefore, we apply its ordinary meaning in our analysis.[16]

Employees are ordinarily defined as a person in the service of another under a contract of hire, express or implied, oral or written, whereby the employer has the right to direct the means or details of the work and not merely the result to be accomplished.[17]  While the employer's "control" is the most important feature of an employment relationship, Texas courts have found several related factors to be helpful in distinguishing employees from independent contractors, including  (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies and material; (3) the hiring party's right to control the progress of the work; (4) the length in time of the employment; and (5) the method of payment.[18]

---

[15] 41 Am. Jur. 2d INDEPENDENT CONTRACTORS §§ 1–23 (2008).

[16] *See* TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005).

[17] *See Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 279 (Tex. 1990); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Travelers Ins. Co. v. Ray,* 262 S.W.2d 801, 803 (Tex. Civ. App.—Eastland 1953, writ ref'd).

[18] *Ross v. Tex. One P'ship,* 796 S.W.2d 206, 210 (Tex. App.—Dallas 1990, no writ); *Sherard v. Smith,* 778 S.W.2d 546, 548 (Tex. App.—Corpus Christi 1989, writ denied); *Wasson v. Stracener*, 786 S.W.2d 414, 420 (Tex. App.—Texarkana 1990, writ denied).

At the hearing before the ALJ, the parties introduced the following evidence: (1) dancers at Illusions must fill out paperwork and provide Illusions with, among other things, their name, stage name, address, telephone number, and social security number; (2) dancers are given a "rule book" that they must read and sign; (3) dancers are briefed by Illusions's management as to the club rules that they are expected to follow; (4) Illusions does not provide weekly work schedules—the dancers just "show up"; (5) some of the dancers are transient and not around very long; (6) Illusions may "swap" dancers among its clubs on any given night to ensure that there are enough dancers at each club; (7) dancers sign in on a door sheet; (8) dancers are required to pay a $10 stage fee each night they perform; (9) dancers request music from the disc jockey; (10) Illusions directs how the dancers rotate around the stage and how many songs the dancers perform at each pole on the stage; (11) Illusions's "house mom" provides assistance with hair and makeup, snacks, and clothing as needed, and she guards the dancers' money when they are not around; (12) the only compensation dancers receive from Illusions is a commission for drinks sold at the club, and their compensation is primarily derived from tips they receive from customers; and (13) Illusions does not file tax statements on the dancers.

Reviewing this evidence in light of the factors listed above, we conclude that there is substantial evidence to support the ALJ's conclusion that Illusions

10

exercised sufficient control over Lawson's dancing activities to make her an employee of Illusions on the night in question.[19]

**B.  Interested Witness Testimony**

Illusions further contends that the ALJ's ruling is not supported by substantial evidence because the only evidence that Lawson solicited Miers and May is testimony from an interested witness.  In order for the testimony of an interested witness to establish a fact, as a matter of law, it must be "clear, direct and positive," with "no circumstances in evidence tending to discredit or impeach such testimony."[20]

---

[19] *See Vela v. State,* 776 S.W.2d 721, 724–25 (Tex. App.—Corpus Christi 1989, no pet.)(holding dancer was employee when dancer worked nights, entered club through dressing room, and danced on stage several times); *Bruce v. State,* 743 S.W.2d 314, 315–16 (Tex. App.—Houston [14th Dist.] 1987, no pet.)(holding dancer employee when dancer filled out application and had to get permission before performing, club's disc jockey called dancer to stage to perform, club provided dressing room closed off from club patrons, and dancer received a commission from drinks sold at club); *but cf. Reich v. Circle C. Inv., Inc.,* 998 F.2d 324, 327 (5th Cir. 1993)(focusing on the "economic reality" and considering the degree of control exercised by the club, the extent of the relative investments, the degree to which the dancer's opportunity for profit or loss was determined by the club, the skill and initiative required in performing the job, and the permanency of the relationship).

[20] *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972); *see also Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex. 1965); *Cochran v. Wool Growers Cent. Storage Co.,* 140 Tex. 184, 191, 166 S.W.2d 904, 908 (Tex. 1942).

11

Meirs was the only witness to testify concerning the events forming the basis of TABC's complaint. He testified that Lawson voluntarily approached him and May, talked directly to him, agreed to go to a hotel room with him and May when she got off work at 2:00 a.m., and told him it would cost $400 an hour for both him and May, that she would "give them all the . . . they could handle," and, that if they did not come back to get her, they "would miss out on one good [thing]." Meirs further testified that he related this information to May in Lawson's presence and that the three of them nodded their heads in agreement.

In a contested case hearing, the administrative law judge, as the finder of fact, is the sole judge of the witness's credibility and is free to accept or reject the testimony of any witness or even accept "part of the testimony of one witness and disregard the remainder."[21] A reviewing court is not permitted to substitute its judgment for the administrative law judge's regarding the credibility of witnesses and must resolve evidentiary ambiguities in favor of the administrative order with a finding of substantial evidence to support the administrative law judge's decision.[22]

---

[21] *S. Union Gas Co. v. R.R. Comm'n of Tex.,* 692 S.W.2d 137, 141–42 (Tex. App.—Austin 1985, writ ref'd n.r.e).

[22] *Ford Motor Co., v. Tex. Dep't of Transp.,* 936 S.W.2d 427, 429–30 (Tex. App.—Austin 1996, no writ).

Upon conducting a thorough review of the record, we find no evidence tending to discredit Miers's testimony concerning the events that took place between Miers and May, and Lawson inside Illusions on the night of February 12, 2005. Miers's testimony is clear, direct, and positive. Accordingly, the ALJ could properly consider Miers's testimony in finding that Lawson had solicited Miers and May for sexual purposes.[23]

## C. Place or Manner Violations

Illusions also contends that the one incident on which TABC's claim is based is insufficient to support a finding that the place or manner in which Illusions operates its business jeopardizes the people's general welfare, health, peace, morals, or sense of public decency.[24]

Whether a permittee conducts its business so as to jeopardize the people's general welfare, health, peace, morals or sense of public decency cannot be

---

[23] *See Great Am. Reserve,* 391 S.W.2d at 47; *Cochran,* 166 S.W.2d at 908; *see also Swilley,* 488 S.W.2d at 67.

[24] Illusions asserts without argument or authority that sworn testimony of a pattern must be established to support a place or manner violation. We have found no authority—statutory, case law, or otherwise— requiring that a pattern be established to support a place or manner violation. *But see Tex. Alcoholic Beverage Comm'n v. I Gotcha Inc.,* 2006 WL 2095449, at * 2, 4 (Tex. App.— Amarillo July 28, 2006, pet. denied)(memo op.)(finding substantial evidence to support ALJ's findings and conclusions of a "pattern of inappropriate conduct").

determined by a set formula.[25] The agency has great discretion in making this determination, and we will not disturb it unless it is apparent that the agency acted arbitrarily and unreasonably.[26] We will uphold this conclusion of law if it is supported by substantial evidence.[27]

The substantial evidence shows that Lawson did solicit Miers and May for sexual purposes in violation of sections 11.61(b)(7) and 104.01(7) of the Code.[28] In addition, TABC introduced Illusions's permit violation history that demonstrated that Illusions had been cited four previous times for Code violations.[29]

---

[25] *Four Stars Food Mart, Inc. v. Tex. Alcoholic Beverage Comm'n,* 923 S.W.2d 266, 272 (Tex. App.—Fort Worth 1996, no writ); *Ex parte Velasco,* 225 S.W.2d 921, 923 (Tex. Civ. App.—Eastland 1949, no writ).

[26] *Four Stars,* 923 S.W.2d at 272; *Velasco,* 225 S.W.2d at 923.

[27] *Four Stars,* 923 S.W.2d at 272.

[28] *See supra* Part IV. B.

[29] One of the violations concerned a breach of the peace contrary to Code sections 28.11 and 11.61(b)(2). The trial court reversed this violation because it was not supported by substantial evidence. The charge in that matter did not charge the club with a violation, but only the dancers involved. The record does not reveal the nature of the remaining three violations. At the time of the hearing, Illusions had accepted and paid the civil penalty on one, the trial court had remanded one to TABC for further consideration, and one was on appeal.

14

Applying the requisite deferential standard, we cannot say that the ALJ's conclusion that the place or manner in which Illusions conducted its business was contrary to the people's general welfare, health, peace, morals, safety and sense of public decency was unreasonable.

Having concluded that there is substantial evidence to support the ALJ's finding that Illusions violated sections 11.61(b)(7) and 104.01(7) of the Code, we overrule Illusions's first issue.

## V.  Section 11.64(b)

Illusions next asserts that by imposing a civil penalty pursuant to section 11.64, the ALJ should have considered mitigating factors and applied section 11.64(b) of the Code to "relax" the penalty assessed.[30]

In determining the amount of a penalty assessed in lieu of suspension or cancellation of a permit, the agency must consider the type of permit held, the type of violation, any aggravating or ameliorating circumstances concerning the violation, including those enumerated by statute, and the permittee's previous

---

[30] *See* TEX. ALCO. BEV. CODE § 11.64(b) (Vernon 2007) (providing that under certain statutory circumstances set forth therein, there is discretion to "relax any provision of the code relating to the suspension or cancellation of the permit or license" and assess a just sanction, or reinstate the permit or license during the suspension period upon payment of a fee of "not less than $75 nor more than $500").

15

violations.[31] The penalty cannot be based on the volume of alcoholic beverages sold, the business receipts, taxes paid, or the financial condition of the permittee.[32] The penalty cannot be less than $150 or more than $25,000 for each day the permit was to have been suspended.[33] An agency has broad discretion in determining which sanction best serves the statutory policies committed to the agency's oversight.[34] An agency's decision in determining the appropriate penalty will not be reversed unless an abuse of discretion is shown.[35]

Section 11.64(b) provides that the agency may relax any provision of the Code relating to suspension of the permit if an employee of the permittee violated the Code without the knowledge of the permittee, the permittee did not

---

[31] *See id.* § 11.641(a), (c) (Vernon 2007).

[32] *Id.* § 11.641(b).

[33] TEX. ALCO. BEV. CODE ANN. § 11.64(a).

[34] *Fay-Ray Corp. v. Tex. Alcoholic Beverage Comm'n,* 959 S.W.2d 362, 369 (Tex. App.—Austin 1998, no pet.).

[35] *Id.*

knowingly violate the Code, or the violation could not reasonably have been prevented.[36] However, this provision is discretionary.[37]

The penalty imposed by the ALJ was within the statutory guidelines. The ALJ did not abuse her discretion in refusing to relax the penalty under section 11.64(b) of the Code. We overrule Illusions's second issue.

## VI. Conclusion

Having overruled Illusions's two issues on appeal, we affirm the trial court's judgment affirming the TABC's October 30, 2006 final order.

PER CURIAM

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DELIVERED: July 31, 2008

---

[36] TEX. ALCO. BEV. CODE § 11.64 (b)-(c).

[37] *Allen-Burch, Inc. v. Tex. Alcoholic Beverage Comm'n,* 104 S.W.3d 345, 352 (Tex. App.—Dallas 2003, no pet.) (recognizing provision discretionary); *Tex. Alcoholic Beverage Comm'n v. Top of the Strip, Inc.,* 993 S.W.2d 242, 252 (Tex. App.—Austin 1998, pet. denied)("The operative phrase is *may* relax the provisions of the code.")(emphasis in original).